UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND<br>SURETY COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SANDRA A. RATLIFF,<br><br>    Defendant. | No. 6:23-CV-039-H |

**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT**

Before the Court is Travelers Casualty and Surety Company of America's Motion for Default Judgment. Dkt. No. 12. Travelers alleges that it has the right to recover damages for money mistakenly deposited into Sandra Ratliff's bank account pursuant to claims of conversion, violation of the Texas Theft Liability Act, fraud, unjust enrichment, and money had and received. *See id.* at 4–7. Specifically, Travelers seeks the following: (1) $827,000 in damages; (2) prejudgment interest; (3) post-judgment interest; (4) $150,000 in exemplary damages; and (5) attorneys' fees, costs, and expenses. *Id.* at 9–10.

Because Travelers has met the procedural requirements for obtaining default judgment and presents a sufficient basis for entry of judgment, the Court grants Travelers a default judgment against Ratliff, including its actual damages and post-judgment interest. However, the Court finds that prejudgment interest is not appropriate, and because Travelers has not sufficiently alleged its fraud claim, it cannot recover exemplary damages. In addition, Travelers must provide sufficient evidence that its requested attorneys' fees are reasonable and necessary and is ordered to file an updated motion for attorneys' fees within 30 days of the date of this Order.

1.   **Factual[1] and Procedural History**

Travelers is the assignee and subrogee of Goldthwaite Bancshares, Inc., which operates four banks in central Texas under the name MCBank. Dkt. No. 1 at 1–3. On September 26, 2022, Ratliff deposited a $100,000 cashier's check drawn on TD Bank at the MCBank location in Early, Texas. *Id.* at 2. The bank verified the check information, accepted the check, and issued Ratliff a receipt showing that her new balance was $100,219.16. *Id.* However, the bank incorrectly processed the check as $1,000,000 instead of $100,000, and Ratliff's online account was updated to reflect the erroneous amount. *Id.*

On September 28, "as soon as the [b]ank opened its doors," Ratliff returned to the bank and "request[ed] a wire transfer of $977,000 to her Coinbase cryptocurrency account[,] even though she must have known that her account should not have that much money in it." *Id.* The bank completed the transfer. *Id.* at 3. However, TD Bank later informed Goldthwaite about the check-processing error. *Id.* Although Goldthwaite attempted to recall the money, the transfer to Coinbase was completed, and the money was then transferred out of the Coinbase account. *Id.* TD Bank credited Goldthwaite the $100,000 from the cashier's check, resulting in a loss of $877,000 to Goldthwaite. *Id.*

Travelers, Goldthwaite's insurer, then paid Goldthwaite $827,000, or the amount of its loss less the $50,000 deductible. *Id.* In return, Goldthwaite assigned its claims, rights, demands, and causes of action against Ratliff to Travelers. *Id.* Travelers demanded that Ratliff return the $827,000 on March 3 and May 8, 2023, but Ratliff ignored those demands. *Id.*

---

[1] A district court takes as true the well-pleaded facts asserted against a defaulting defendant. *Escalante v. Lidge*, 34 F.4th 486, 492–93 (5th Cir. 2022); *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Travelers brought the instant suit on July 12, 2023, asserting claims of conversion, violation of the Texas Theft Liability Act (TLA), fraud, unjust enrichment, and money had and received. *Id.* at 4–7. Travelers also asserted claims for exemplary damages under its fraud claim and attorneys' fees under its TLA claim. *Id.* at 6–7. Travelers served Ratliff on July 17, Dkt. No. 8, but Ratliff has never made an appearance in the case. Travelers then moved for an entry of default on August 18. Dkt. No. 9. That same day, the Clerk of Court entered a default against Ratliff. Dkt. No. 10. The Court ordered Travelers to move for default judgment (Dkt. No. 11), and Travelers did so on October 31 (Dkt. No. 12). Travelers' motion for default judgment (Dkt. No. 12) is now ripe for resolution.

## 2.     Standard of Review

When a defendant fails to plead or otherwise respond to the complaint within the time period required by Federal Rule of Civil Procedure 12(a)(1)(A), the plaintiff may apply for a default judgment based on the default. Fed. R. Civ. P. 55(a)–(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Default judgment is a three-step procedure requiring (1) the defendant's default, (2) the entry of default by the clerk, and (3) the issuance of a default judgment. *N.Y. Life Ins. Co.*, 84 F.3d at 141.

The entry or denial of default judgment is committed to the discretion of the district court. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (citation omitted). Default judgment is a drastic remedy disfavored in federal court. *Id.* (citation omitted). A plaintiff "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). To receive default judgment, a plaintiff must establish that: (1) the defendant has been served with the summons and complaint, and the clerk has entered default against the defendant; (2) "the

defendant is neither a minor nor an incompetent person"; (3) the defendant is not in military service or otherwise subject to the Servicemembers Civil Relief Act; and (4) if the defendant has appeared, the defendant was provided with notice of the motion for default judgment at least seven days before the hearing. *See Ocwen Loan Servicing, LLC v. Kingman Holdings, LLC*, No. 3:18-CV-1197-S, 2018 WL 7150247, at *2 (N.D. Tex. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 399900 (N.D. Tex. Jan. 31, 2019); Fed. R. Civ. P. 55; 50 U.S.C. § 3931.

A court should first consider whether an entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) "whether there has been substantial prejudice"; (3) "whether the grounds for default are clearly established"; (4) whether the defendant's default "was caused by a good faith mistake or excusable neglect"; (5) "the harshness of a default judgment"; and (6) whether the Court would feel obligated to set aside the default on the defendant's motion. *Id.*

After the Court has determined that the plaintiff has met the procedural requirements for default judgment, it must next "assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment." *J&J Sports Prods., Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). By defaulting, the defendant admits the plaintiff's factual allegations, and the entry of a default judgment concludes the matter as to the facts. *Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). However, a "defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law," and a court "may still

deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." *Escalante*, 34 F.4th at 492–93 (citations omitted). The factual allegations in the complaint provide sufficient support for a default judgment if they "give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests" and "raise a right to relief above the speculative level." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, allegations "cannot sustain a default judgment where they 'are contrary to facts of which the court will take judicial notice, or . . . are contrary to uncontroverted material in the file of the case.'" *Escalante*, 34 F.4th at 493 (quotation omitted).

Finally, the Court must "determine what form of relief, if any, the plaintiff should receive." *J&J Sports Prods.*, 126 F. Supp. 3d at 814 (citation omitted). A defendant's default does not concede the truth of allegations regarding damages. *Id.* at 816 (citation omitted). "[U]nliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citation omitted). However, the Court need not hold a hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.* at 310 (citations omitted).

The Court, sitting in diversity, applies state law to the substantive rights at issue. *Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 812 (5th Cir. 2018) (citing *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003)). Here, Texas law governs. *See* Dkt. No. 1. Therefore, to be entitled to default judgment, the plaintiff must successfully plead claims under Texas law. *See Escalante*, 34 F.4th at 492–93; *see also Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). To determine Texas law, a court should first consider decisions of the Supreme Court of Texas. *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868

F.3d 408, 414 (5th Cir. 2017). In the absence of direct guidance, a court "must determine, in [its] best judgment, how [it] believes [the Supreme Court of Texas] would resolve the issue." *Id.* (quoting *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014)).

3. Analysis

    A. **Default judgment is procedurally warranted.**

Having considered the relevant *Lindsey* factors, the Court finds that default judgment is procedurally warranted. Those factors include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the [C]ourt would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

First, because Ratliff has failed to file an answer, there are no material issues of fact involved. *See J&J Sports Prods.*, 126 F. Supp. 3d at 814. Second, Ratliff's failure to respond has impeded the administration of justice, thereby prejudicing Travelers. *See id.* Third, Travelers has clearly established the grounds for default. *See* Dkt. Nos. 8; 10. Fourth, there is no evidence in the record that Ratliff's default was due to a good faith mistake or excusable neglect. Fifth, default judgment would not be unduly harsh here—it would merely require Ratliff to return the funds. Finally, the Court concludes that it would not feel obligated to set aside a default upon a motion by Ratliff. Thus, all of the *Lindsey* factors weigh in favor of default judgment, and the Court finds that a default judgment is procedurally warranted. *See J&J Sports Prods.*, 126 F. Supp. 3d at 814–15.

### B. Travelers is entitled to default judgment on all but one of its claims.

Travelers has sufficiently alleged its claims of conversion, violation of the Texas Theft Liability Act, unjust enrichment, and money had and received. Given that Ratliff did not appear, it is entitled to default judgment on those counts. However, Travelers has not sufficiently pled its fraud claim and is not entitled to relief on that count.

#### i. Conversion

First, Travelers has sufficiently pled a cause of action of conversion and is entitled to default judgment on that claim. To succeed on a claim of conversion, the plaintiff must show that "(1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and (3) the plaintiff suffered injury." *Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.) (citations omitted). In addition, "[i]f the defendant originally acquired possession of the plaintiff's property legally, the plaintiff must establish that the defendant refused to return the property after the plaintiff demanded its return." *Id.* (citations omitted). Finally, an action for conversion of money requires the plaintiff to show that the money's "identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 175 (Tex. App.—Dallas 2011, pet. denied) (quoting *Hous. Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)).

Here, Travelers has shown that Goldthwaite mistakenly credited $1,000,000 to Ratliff's account instead of the $100,000 amount on the cashier's check. Dkt. No. 1 at 2.

Goldthwaite, as the owner and operator of the bank, had legal possession of the money kept there, including the extra $900,000. *See id.* Ratliff then wired the money to her Coinbase account, exercising control over the funds and removing them from Goldthwaite's possession and control. *Id.* Goldthwaite suffered injury in the form of its $877,000 loss, and Travelers suffered injury in the form of the $827,000 paid to Goldthwaite under the insurance policy. *Id.* at 3. In addition, although Ratliff originally came into possession of the funds through a mistake by the bank, not through her own illegal action, Travelers then demanded the return of the funds, and Ratliff ignored the demands. *Id.*

Travelers has also sufficiently alleged conversion of money. Here, the money's identification is possible. Based on Ratliff's "correct" balance after the deposit of the cashier's check, she only had $100,219.16 in her account. Dkt. No. 1 at 2. Thus, at least $876,780.84 of the $977,000 that Ratliff wired to her Coinbase account properly belonged to Goldthwaite. *See id.* Travelers can thus identify the money that was converted. In addition, Travelers has sufficiently alleged that Ratliff had an obligation to deliver that specific money. It alleges that Ratliff "must have known that her account should not have had that much money in it" and that Ratliff refused to return the money when Travelers demanded its return. *Id.* at 2–3. Travelers, as Goldthwaite's assignee and subrogee, has sufficiently raised a right to relief, and its factual allegations are sufficient to support a default judgment on its conversion claim.

      **ii.**    **Texas Theft Liability Act**

Travelers has also adequately pled a cause of action under the TLA. *See* Tex. Civ. Prac. & Rem. Code § 134.001 *et seq.* The TLA provides that "[a] person who commits theft is liable for the damages resulting from the theft." *Id.* § 134.003(a). To state a claim under

the TLA, the plaintiff must allege that (1) "the plaintiff had a possessory right to property"; (2) the defendant "unlawfully appropriated property"; (3) the defendant intended to "deprive the owner of property"; and (4) "the plaintiff sustained damages as a result of the theft." *See Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 980 (N.D. Tex. 2014) (quoting *Olufemi-Jones v. Bank of Am., N.A.*, No. 3:12-CV-3428-L, 2013 WL 1482544, at *3 (N.D. Tex. Apr. 10, 2013)); Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.005(a); Tex. Penal Code § 31.03(a). A defendant appropriates property if she "acquire[s] or otherwise exercise[s] control over property," and appropriation is unlawful if "it is without the owner's effective consent." Tex. Penal Code §§ 31.01(4)(B), 31.03(b)(1). Consent is not effective if it is "induced by deception or coercion." *Id.* § 31.01(3)(A).

Here, Goldthwaite had a possessory right to the money kept at its bank. Dkt. No. 1 at 2. However, Ratliff exercised control over that money by wiring it to her Coinbase account. *Id.* This was without Goldthwaite's effective consent because Ratliff "must have known that her account should not have had that much money in it" but acted as if the money was hers, thus deceiving the bank. *Id.* The fact that she moved the money out of the bank to Coinbase and then had the money transferred out of her Coinbase account, *see id.* at 2–3, indicates that she intended to deprive Goldthwaite of the money. Finally, as discussed above, Goldthwaite and Travelers sustained damages as a result. *Id.* at 3. Travelers has sufficiently pled its TLA claim and is entitled to default judgment on that claim.

### iii. Fraud

Travelers has not sufficiently pled its claim of fraud and is not entitled to default judgment on that count. To succeed on a claim of fraud, "a plaintiff must show that (1) the defendant made a false, material representation; (2) the defendant 'knew the representation

– 9 –

was false or made it recklessly as a positive assertion without any knowledge of its truth;' (3) 'the defendant intended to induce the plaintiff to act upon the representation;' and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (quoting *JPMorgan Chase Bank N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)). A "material" representation is one that "was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on or attach importance to the representation in making the decision." *Id.* (citation omitted). "A representation is false if it consists of words or other conduct that suggest to the plaintiff that a fact is true when it is not." *Id.* (citation omitted). However, a "party claiming fraud has a duty to use reasonable diligence in protecting [its] own affairs" and "is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated." *Id.* at 497 (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). Thus, "a plaintiff may not 'blindly rely on a representation by the defendant' when the plaintiff's knowledge, experience, and background alert it to investigate the defendant's representations before acting in reliance on those representations." *Id.* (quoting *Orca Assets*, 546 S.W.3d at 654).

In addition, fraud claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). That rule requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In short, "the who, what, when, where, and how [must] be laid out." *Baker*, 64 F. Supp. 3d at 973 (alteration in original) (quoting *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010)).

Here, Ratliff's conduct of requesting the wire transfer from her bank account to her Coinbase account suggested to Goldthwaite that the money to be wired was hers, when it in fact was not. *See* Dkt. No. 1 at 2, 5. Since the bank had given Ratliff a receipt showing that her balance was only $100,219.16, Ratliff knew that she did not possess $977,000 to transfer. *Id.* Ratliff also clearly intended to induce the bank to act upon the representation by wiring the money as requested. *Id.* Goldthwaite then carried out the transfer, resulting in its $877,000 loss. *Id.* at 2–3. Travelers argues that this reliance on Ratliff's representations was justifiable because Goldthwaite had not yet discovered the check-processing error. Dkt. No. 12 at 6. Travelers has also sufficiently alleged fraud under the Rule 9(b) standard: it has alleged the who (Ratliff), what (requesting the wire transfer), when (September 28, 2022), where (at the Early branch of MCBank, operated by Goldthwaite), and how (by implying that the money was hers).

However, Travelers has ultimately failed to sufficiently allege its fraud claim because other facts in the record indicate that Goldthwaite's reliance was not justifiable. For one, Goldthwaite had previously verified that the amount of the cashier's check should have been only $100,000, and the receipt it gave Ratliff reflected that correct balance. *See* Dkt. No. 1 at 2. Thus, *Goldthwaite* also should have known that Ratliff did not possess the $977,000 she was wiring. In addition, Travelers' exhibits to its motion for default judgment show that Ratliff had "successfully wired approximately $260,000.00 in collected funds to her Coinbase, Inc. account over the past five months." Dkt. No. 12-1 at 9. Ratliff had "cash[ed] in retirement accounts and sold assets to generate these funds," and bank personnel had "discussed this activity with [Ratliff] with each wire." *Id.* at 9–10. Thus, Goldthwaite's experience with Ratliff should have alerted it that the amount of money she

was wiring was much greater than all her previous wires combined, and it should have investigated the source of that money. Goldthwaite had "a duty to use reasonable diligence in protecting [its] own affairs," *Barrow-Shaver Res. Co.*, 590 S.W.3d at 497, but it failed to do so. Thus, Travelers has not sufficiently alleged the justifiable-reliance element of its fraud claim and is not entitled to default judgment on that count.

### iv.   Unjust Enrichment

Travelers has sufficiently pled a claim of unjust enrichment. Under Texas law, "[u]njust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied) (citation omitted). Unjust enrichment occurs when a person has passively received a benefit that would be unconscionable to retain. *Id.* A person is also unjustly enriched if he "obtains a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* (citation omitted). Failure to make restitution of benefits received under circumstances that give rise to an implied or quasi-contract right to repay may be characterized as unjust enrichment. *Id.*

In this case, Ratliff passively received a benefit that would be unconscionable to retain—an unprompted, passive benefit of an extra $900,000 deposited into her account. Dkt. No. 1 at 2. Ratliff then retained that benefit by taking undue advantage when she removed the $977,000 from the bank. *Id.* As a result, Ratliff has a quasi-contractual duty to repay Travelers, as Goldthwaite's assignee and subrogee, for this unjustified windfall. *See Tex. Integrated Conveyer Sys.*, 300 S.W.3d at 367. Travelers has sufficiently pled and is entitled to default judgment on its claim of unjust enrichment.

> v. **Money Had and Received**

Finally, Travelers has alleged sufficient facts to support a claim of money had and received. "A claim for 'money had and received' is equitable in nature," and a plaintiff need only prove that (1) the defendant holds money, and (2) the money in equity and in good conscience belongs to the plaintiff. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (citations omitted); *see also Taylor v. Trevino*, 569 F. Supp. 3d 414, 432 (N.D. Tex. 2021). Money had and received is an appropriate cause of action for a bank's mistaken deposit. *See Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied). For example, in *Doss*, when a bank mistakenly applied funds to the defendant's note instead of his wife's, the court found that the funds "in equity and good conscience belong[ed] to [the bank] so that they can be rightfully applied to [the wife's] note." *Id.*

Here, Goldthwaite mistakenly credited additional money to Ratliff's account, and Ratliff transferred much of that money out of the bank. Dkt. No. 1 at 2. There is nothing to suggest that Ratliff in good faith believed that the money was rightfully hers. *See id.* In other words, Ratliff held money that in equity and good conscience belonged to Goldthwaite, not to her. *See id.* Thus, Travelers has sufficiently pled a claim of money had and received and is entitled to default judgment on that claim.

> C. **Travelers is awarded actual damages and post-judgment interest, but it is not entitled to prejudgment interest or exemplary damages and must provide additional evidence of its attorneys' fees.**

Finally, the Court must assess the relief Travelers should receive. Travelers has requested (1) actual damages of $827,000; (2) prejudgment interest; (3) post-judgment interest; (4) exemplary damages of $150,000; (5) and attorneys' fees, costs, and expenses,

including conditional attorneys' fees if the judgment is challenged or appealed. Dkt. No. 12 at 9–10. The Court finds that Travelers should receive its actual damages with post-judgment interest. However, the Court finds that it is not equitable to award Travelers prejudgment interest, and Travelers cannot recover exemplary damages because it has not shown fraud, malice, or gross negligence by clear and convincing evidence. The Court also notes that while Travelers is entitled to attorneys' fees under the TLA, Travelers has not provided sufficient evidence that its requested fees are reasonable and necessary.

First, Travelers can recover actual damages of $827,000 and post-judgment interest. Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Because Travelers demanded actual damages of $827,000 in its complaint, Dkt. No. 1 at 7, that is the maximum amount of damages it can recover in a default judgment. The damages represent the loss to Travelers as a result of Ratliff's actions—it is the amount Travelers paid to Goldthwaite to cover the loss, calculated as (a) the wire transfer of $977,000, (b) less the $100,000 that TD Bank credited Goldthwaite from the cashier's check, (c) less the $50,000 deductible. *See* Dkt. No. 1 at 3. These damages are "capable of mathematical calculation," and the Court need not hold a hearing on this amount. *See James*, 6 F.3d at 310. Travelers can also recover post-judgment interest at the federal rate. *See* 28 U.S.C. § 1961(b).

### i. Prejudgment Interest

However, the Court finds that Travelers is not entitled to recover prejudgment interest. In a diversity case, state law—here, Texas law—governs the award of prejudgment interest. *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011) (citation omitted). Under Texas law, prejudgment interest is based on either an enabling statute or

general principles of equity. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). The TLA does not specifically provide for recovery of prejudgment interest. *See* Tex. Civ. Prac. & Rem. Code §§ 134.001–.005; *see also* Tex. Fin. Code § 304.102 (requiring prejudgment interest only for "wrongful death, personal injury, or property damage" suits). "Where no statute controls the award of prejudgment interest, the decision to award [it] is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy." *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 487 (Tex. App.—Fort Worth 2004, no pet.). Prejudgment interest is considered "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of the judgment." *Johnson & Higgins*, 962 S.W.3d at 528 (quotation omitted).

Here, it is not equitable to award Travelers prejudgment interest. Although Goldthwaite and Travelers lost the use of their money as a result of Ratliff's actions, this loss is largely due to Goldthwaite's own mistake processing the cashier's check and its failure to investigate Ratliff's wire transfer. *See* Dkt. No. 1 at 2–3. Under principles of equity, Goldthwaite's error does not bar it from recovering the money it mistakenly delivered to Ratliff. *See Ligon v. E.F. Hutton & Co.*, 428 S.W.2d 434, 437 (Tex. App.—Dallas 1968, writ ref'd n.r.e.). But it is inequitable to impose additional penalties on Ratliff for a situation created by Goldthwaite's own mistake and failure to protect its own interests. In addition, Travelers has provided no argument why it would be equitable to award prejudgment interest. *See* Dkt. No. 12 at 8. The Court thus declines to impose prejudgment interest.

### ii.  Exemplary Damages

The Court further finds that Travelers is not eligible to recover exemplary damages, since it has not provided clear and convincing evidence of fraud or malice.  In this diversity case, Texas law supplies the rule of decision on exemplary damages.  *Bear Ranch, L.L.C. v. HeartBrand Beef, Inc.*, 885 F.3d 794, 804 (5th Cir. 2018).  Under Texas law, exemplary damages may be awarded if the plaintiff proves by clear and convincing evidence that the harm for which it seeks exemplary damages results from fraud, malice, or gross negligence.  Tex. Civ. Prac. & Rem. Code § 41.003(a).  Whether to award exemplary damages and the amount of such damages "is within the discretion of the trier of fact."  *Id.* § 41.010(b).

Travelers is not statutorily eligible to receive exemplary damages.  As discussed above, Travelers has failed to sufficiently plead its fraud claim, since it has not shown that Goldthwaite's reliance on Ratliff's representations was justified.  *See supra* Part 3.B.iii.  Thus, Travelers has not shown by clear and convincing evidence that its harm resulted from Ratliff's fraud.  And although Travelers claimed in its complaint that Ratliff acted with actual malice, Dkt. No. 1 at 6, it has not pointed to any facts supporting a finding of malice, *see* Dkt. No. 12 at 8.  The Court finds that Travelers has not shown by clear and convincing evidence that its harm resulted from Ratliff's fraud, malice, or gross negligence.  *See* Tex. Civ. Prac. & Rem. Code § 41.003(a).  Travelers also has not provided any figures, justifications, or arguments as to why its requested amount of $150,000 in exemplary damages is appropriate.  *See* Dkt. No. 12 at 8.  Thus, the Court declines to exercise its discretion to award exemplary damages.  *See* Tex. Civ. Prac. & Rem. Code § 41.010(b).

### iii. Attorneys' Fees

Finally, the Court finds that Travelers is statutorily entitled to recover its reasonable and necessary attorneys' fees and costs, but Travelers must file an updated motion for attorneys' fees that complies with Texas law. The TLA provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." *Id.* § 134.005(b). The TLA "can provide the basis for an attorneys' fee award if that state law supplies the rule of decision," as it does here. *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 (5th Cir. 2016). Because Travelers is entitled to default judgment on its TLA claim, it can recover its reasonable and necessary attorneys' fees.

However, Travelers' motion for default judgment does not provide sufficient evidence that its incurred fees are indeed reasonable and necessary. First, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) (citations omitted). "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. Thus, Travelers must segregate fees between its TLA claim and its other, nonrecoverable claims. However, Travelers' attorneys have simply stated the total amount of legal fees Travelers has incurred, without any indication of segregation or evidence that all of the provided legal services advanced the TLA claim. *See* Dkt. Nos. 12 at 9; 12-2 at 2–3.

In addition, under Texas law, attorneys' fees are calculated using the lodestar method. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex.

– 17 –

2019). First, the factfinder must "determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *Id.* (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). The product of those two figures yields the base fee, or lodestar, which is presumptively reasonable. *Id.* (quoting *El Apple*, 370 S.W.3d at 760). The lodestar may then be adjusted up or down based on other relevant factors. *Id.* (citing *El Apple*, 370 S.W.3d at 760). To calculate the lodestar, the party seeking attorneys' fees must provide, "at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498 (citing *El Apple*, 370 S.W.2d at 762–63). However, Travelers has provided no evidence of the five factors necessary to show its reasonable hours and reasonable hourly rate. *See* Dkt. Nos. 12 at 9; 12-2 at 3. Instead, its attorneys have simply provided "testimony about [the] attorney's experience, the total amount of fees, and the reasonableness of fees," which is not sufficient under the lodestar method. *See id.*; *Rohrmoos Venture*, 578 S.W.3d at 496.

  Lastly, Travelers has requested contingent attorneys' fees if the judgment is challenged or appealed. *See* Dkt. No. 12 at 9. Under Texas law, if a party is entitled to attorneys' fees at trial, it is also entitled to receive attorneys' fees for successfully defending the case on appeal. *Automation Support, Inc. v. Humble Design, L.L.C.*, 734 F. App'x 211, 216 (5th Cir. 2018) (quoting *DP Sols, Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003)); *cf. Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015) ("If trial attorney's fees are mandatory under section 38.001, then appellate attorney's fees are also mandatory when proof of reasonable fees is presented."). However, such contingent appellate fees must be based on

"opinion testimony about the services [the party] reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020) (citations omitted).  These fees must also be "conditioned upon a successful appeal," such that the party cannot recover contingent appellate fees unless the appeal is actually "resolved in that party's favor." *Ventling*, 466 S.W.3d at 155–56 (citations omitted).  Here, Travelers has provided no evidence about what services will be necessary on appeal or a reasonable hourly rate. *See* Dkt. No. 12-2 at 3.  Its proposed order also does not make its appellate attorneys' fees contingent on a successful appeal.  *See* Dkt. No. 12-3 at 1.

Thus, Travelers is ordered to file an updated motion for attorneys' fees within 30 days of the date of this Order.  Such motion should include sufficient evidence of fee segregation between its recoverable and nonrecoverable claims and for the calculation of its reasonable and necessary fees under the lodestar method.

**4.   Conclusion**

Because Travelers has shown that default judgment is procedurally warranted and its complaint presents a sufficient basis for entry of judgment, the Court grants in part Travelers' motion for default judgment (Dkt. No. 12).  The Court finds that Travelers should be awarded actual damages and post-judgment interest.  However, Travelers is not entitled to prejudgment interest or exemplary damages.  Travelers must also file an updated motion for attorneys' fees, with sufficient evidence that its requested fees are reasonable and necessary, within 30 days of the date of this Order.  A final judgment will follow in a separate document.

So ordered on January 30, 2024.

                                                  JAMES WESLEY HENDRIX
                                                  UNITED STATES DISTRICT JUDGE